Phillips, Appellant, *v.* Unemployment Compensation Board of Review.
Howley, Appellant, *v.* Unemployment Compensation Board of Review.

Argued (Appeal No. 302) November 17, 1942. Before KELLER, P. J., CUNNINGHAM, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ. (BALDRIGE, J., absent); submitted (Appeal No. 311) December 9, 1942. Before KELLER, P. J., BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*George I. Puhak,* with him *John T. J. Brennan,* for Phillips, appellant No. 302.

*George I. Puhak,* for Howley, appellant No. 311.

*R. Carlyle Fee,* Asst. Special Deputy Attorney General, with him *Charles R. Davis,* Special Deputy Attorney General, and *Claude T. Reno,* Attorney General, for appellee.

OPINION BY HIRT, J., March 10, 1943:

The facts in these appeals are interrelated. The claims for unemployment compensation were consolidated for hearing before the board and they will be similarly treated here.

Phillips was employed at the Hazleton Shaft Mine which was operated by the Lehigh Valley Coal Company with Hazleton Shaft Colliery as a unit. This operation also included Hazleton No. 1 Mine as an auxiliary from which coal was transported by rail to the breaker at the shaft mine. The appeal of Phillips, by agreement, will dispose of the claims of 1,275 employees of the Lehigh Company. Appellant Howley, along with 365 others involved in his appeal, worked in the auxiliary mine.

The Lehigh Company also operated Spring Mountain Colliery and Spring Mountain Mine at Jeanesville, together with Spring Brook Colliery Mine, as an auxiliary. All of the employees working in the Hazleton and the

Jeanesville mines were members of local labor unions under the jurisdiction of the United Mine Workers of America. For a number of years, beginning perhaps as early as 1935, the Lehigh Company had been "robbing the pillars" in the Jeanesville mines with the avowed intention of abandoning the mines at the end of this operation. On September 24, 1940, the district officers of the union stopped work in the Jeanesville mines. There is some evidence that the strike was ordered because of "wild cat" methods of mining which, it is alleged, involved danger of trapping men in the mines by falling rock when the supports were removed. However, the testimony indicates that the union closed the Jeanesville mines not because of dangerous methods of operation, but moved by a laudable determination to induce the company to further develop the mines by legitimate methods thus providing continued employment for about 800 men who otherwise would be out of work when the "robbing" operation ended. It is contended that the strike was ordered when a development program suggested by the union was finally rejected by the company. The union later negotiated a lease of the Jeanesville mines to the Stevens Coal Company and all of the men formerly employed there returned to work on November 6, 1940, as employees of that company.

The issue of fact in the Phillips case differs from that raised by claimant Howley. Beginning September 25th and continuing until October 21, 1940, when the Stevens Coal Company took over the Jeanesville mines, Phillips and all other employees in Hazleton Shaft and Hazleton Shaft Colliery refused to work. This is admitted, but Phillips and his fellow employees contend that their refusal to work was not voluntary but that they were obliged to remain idle under the terms of an agreement between the Lehigh Company and the Union. Howley, on the other hand, testified that he appeared at Hazleton Mine No. 1 on September 25th and on suc-

ceeding days and was refused work and was told by the foreman that the mine was closed. The question in both appeals is whether there is substantial evidence to support the findings of fact affirmed by the board that unemployment in all of the Hazleton mines was voluntary, resulting from an industrial dispute. *Dept. L. & I, etc. v. Unemployment Comp. Bd.,* 148 Pa. Superior Ct. 249, 24 A. 2d 924. A workman who is voluntarily unemployed for that reason is "ineligible for compensation for a further waiting period of three weeks in addition to the [initial] waiting period" of three weeks, under §401(e) of the Act of December 5, 1936, Second Ex. Sess. (1937) 2897; 43 PS 801. Claimants were regular employees of the Lehigh Company and if they were away from their work from choice because of a labor dispute, as the board found, they are not entitled to compensation; their unemployment was wholly within the waiting period during which no benefits are payable.

Section 505 of the Unemployment Compensation Law, 43 PS 825 provides that "the conduct of hearings and appeals, shall be in accordance with rules of procedure prescribed by the board whether or not such rules conform to common law or statutory rules of evidence and other technical rules of procedure." A rule of the board provides that "The referee may continue the hearing of any appeal and make an investigation either in person, or through an investigator, or other person designated by the board when, in his judgment, such investigation is necessary to determine any question of fact raised by any papers filed, or by any evidence that has been offered. Any evidence thus obtained shall be submitted by the referee at the continued hearing, and he shall afford the parties affected an opportunity for cross examination or rebuttal."

The Lehigh Company, technically, was an 'affected party' (*Susq. Col. Co. v. Unemploy. Comp. Board,* 137

Pa. Superior Ct. 110, 8 A. 2d 445) but having paid the required assessments, had no direct financial interest in the proceeding and did not appear or supply witnesses to rebut the claims. Thereupon the referee found it necessary to order an investigation under the above rule to determine questions of fact bearing on the issue. The investigator appointed by the board filed his report which contained copies of news items from local papers to the effect that the union had called a strike at all of the Hazleton mines in support of the development demands at Jeanesville; other newspaper clippings showed a schedule in the Hazleton mines indicating that work was available throughout the period. In addition, the investigator reported the substance of an interview with the superintendent of the Lehigh Company to the effect that the men were notified each day, during the period, by whistle and over the radio, that the Hazleton mines were open for work; that only a few reported on September 25th and none thereafter until October 21, 1940, when they all returned.

The obvious weakness of appellee's position in Howley's appeal is that the findings of fact affirmed by the board, upon which its order rests, are based wholly upon the report of the investigator. From the report, the referee found in substance that the company each day gave notice in the usual manner that the mines were open for work; that there was no dispute of any nature between employer and employees at Hazleton; that there was concert of action between the employees of the Hazleton and the Jeanesville mines and that all of the men at Hazleton refused to work, in support of the strike at Jeanesville. There may be circumstances outside of the investigator's report rebutting Howley's testimony that he reported for work and was refused employment, but they were not made the basis of any of the findings. The report itself had no probative value and as evidence it was all hearsay. The proceeding was

not invalidated by its admission over objection, but there was error in accepting it as competent evidence of basic facts.

The rule of construction applicable to administrative bodies when the statute provides in effect, that the rules of evidence prevailing in courts of law shall not be controlling, has been thus stated in *Consolidated Edison Co. v. National Labor Relations Bd.*, 305 U. S. 197, 59 S. Ct. 206: "The obvious purpose of this and similar provisions is to free administrative boards from the compulsion of technical rules so that the mere admission of matter which would be deemed incompetent in judicial proceedings would not invalidate the administrative order. ['Citing cases.] But this assurance of a desirable flexibility in administrative procedure does not go so far as to justify orders without a basis in evidence having rational probative force. Mere uncorroborated hearsay or rumor does not constitute substantial evidence." In deciding the question "we must, therefore, determine whether the evidence depended upon to support the order is substantial and legally competent, keeping in mind the definition of 'substantial evidence' as set forth in *N. L. R. B. v Columbian, etc., Co.*, 306 U. S. 292, 299, 300, that 'Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," ...... and it must be enough [both in quantity and quality] to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.'" *Union Trust Co. of Pbgh's Petition*, 342 Pa. 456, 20 A. 2d 779. An order of court cannot rest on a report of an investigator received after the testimony has been taken. *Phila. Labor's N.-P. L. Club's App. for Inc.*, 328 Pa. 465, 196 A. 22; *Erie City et al. v. Pub. Ser. Com.*, 278

Pa. 512, 123 A. 471. Although the right of the legislature to create or alter rules of evidence must be recognized, "this power is subject to these limitations: (1) It is at least doubtful if the legislature can, under the guise of creating a 'rule of *evidence*', make something evidence which is in fact *not* evidence, (2) If in fact the legislature is attempting to regulate a rule of evidence, 'its regulation must be impartial and uniform': Cooley on Constitutional Limitations, 8th Ed. Vol. 2, p. 768" : *Rich Hill Coal Company v. Bashore*, 334 Pa. 449, 485, 7 A. 2d 302. What is legally competent evidence should not be determined by the character of the fact finding body trying the issue. To be sure, "Mere admission by an administrative tribunal of matters which, under the rules of evidence applicable to judicial proceedings would be deemed incompetent, does not invalidate an order made by it," (*Hoffman et al. v. P. S. C.*, 99 Pa. Superior Ct. 417) but it must appear that such order is based on findings of fact supported by competent and relevant testimony. *Cage et al. v. P. S. C.*, 125 Pa. Superior Ct. 330, 189 A. 896.

A report of an investigator, when ordered, should be made a part of the record for the information of the Board and should be open to the claimant. What the investigator himself has observed, bearing on the issue, may become competent proof if the opportunity of cross examination is afforded. *Heinhold v. Pgh. Brass Mfg. Co.*, 132 Pa. Superior Ct. 400, 200 A. 947. But the contents of the report in these cases was not made competent by the action of the Board in continuing the hearing to afford claimants the opportunity of cross examining the investigator. Cross examining him on subject matter wholly hearsay would have been futile, and the admission of the report over objections did not put any burden on claimants to rebut its contents. It had no probative force and there was nothing to rebut.

We agree that an investigation under the circum-

stances was necessary and proper, and the report had value. The duty of the referee and the Board is not fulfilled merely by hearing the witnesses who voluntarily appear. The Board is charged with the duty of safeguarding the fund. If the employer does not appear and in justice to the fund additional testimony is required, it is the duty of the referee or the Board to call witnesses who can supply it. Act 1936 Supra, §506, 43 PS 826. The value of the report in these cases is merely to indicate the sources of competent evidence bearing upon the issue. At a proper hearing, after notice, witnesses identified by the investigator may be called and their testimony, insofar as it is competent, may be taken subject to cross examination. For this purpose the record in Howley's appeal should be referred back to the Board.

The appeal in the Phillips case will be affirmed. It was his contention that there was no strike, sympathetic or otherwise, in the Hazleton mines but that the men suspended work because of an "equalization" agreement between the union and the company which required them to lay off whenever Hazleton had worked four days more than Jeanesville. It is conceded that during the year Hazleton had worked 137 days and Jeanesville but 133. The report of the investigator contains a copy of an award of the Anthracite Coal Strike Commission, applicable to operators with more than one colliery, ordering a division of working time equitably between the separate operations with a permissible tolerance of as much as 20%. This was not evidence but became so on the admission of the union officials that this order applied to all collieries in the absence of a specific agreement between the union and the operator relating to equalization of working time in the two operations. There is some evidence of negotiations between the Lehigh Company and the union beginning in 1935 but the evidence is wholly insufficient

to establish an "equalization" agreement reducing the permissible tolerance to four days. All that the evidence established was the promise of the officers of the company and a policy to equalize the working time in the two operations as nearly as possible. The only conclusion from the evidence is that the men in the Hazleton Shaft Mine and Colliery by common consent suspended work in support of the strike at Jeanesville. Their unemployment was voluntary and resulted from a labor dispute. It is unimportant that the Board based its order on findings from the investigator's report. The evidence will support no other conclusion.

The order in 302 October Term, 1942, is affirmed. The record in 311 October Term, 1942, is remitted to the Unemployment Compensation Board of Review for further proceedings in accordance herewith.