Edward BURCHELL, Jr., Petitioner

v.

### UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 23, 2004.

Decided April 29, 2004.

BEFORE: FRIEDMAN, Judge, and LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEADBETTER.[1]

Edward Burchell, Jr., petitions for review of the September 8, 2003, order of the Unemployment Compensation Board of Review (Board), which affirmed the decision of a referee to deny Burchell benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law).[2] We affirm.

The Board adopted the findings and conclusions of the referee, who found as follows. Burchell was employed by the University of Pittsburgh (employer) as a Systems Programmer II. Employer has a policy which prohibits employees from using employer's computers "for the creation, design, manufacture, preparation, display, or distribution of any written or graphic obscene material." Burchell was aware, or should have been aware, of this policy. On April 5, 2002, Employer placed Burchell on administrative leave pending an investigation into his alleged violation of this policy. Employer believed that Burchell had downloaded pornographic material from the internet onto employer's computer system.[3] In addition, employer had discovered a foreign CD in the computer that Burchell used, which contained pornographic movies. On April 25, 2002, following its investigation, employer terminated Burchell's employment.

Burchell applied for benefits, which the UC Service Center granted based on employer's failure to prove willful misconduct. Employer filed an appeal, and hearings

Mark E. Milsop, Pittsburgh, for petitioner.

Teresa H. DeLeo, Harrisburg, for respondent.

---

1. This case was reassigned to the opinion writer on February 17, 2004.

2. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law provides that an employee is not entitled to benefits for any week in which the unemployment is due to discharge for willful misconduct connected with the employee's work.

3. Burchell was given a laptop computer to perform his job duties. R.R. at 32a.

were held before a referee. Employer testified that Burchell was the only person who had the access to the laptop since only he knew the password to the laptop. Burchell denied downloading pornographic material to the laptop as well as ownership of the CD containing pornographic material. The referee found Burchell incredible and that Burchell downloaded pornographic material to one of employer's computers and left a CD of pornographic movies in a computer. The referee concluded that Burchell's conduct constituted willful misconduct. Thus, the referee reversed the grant of benefits. Burchell appealed to the Board, which affirmed. Burchell now appeals to this court.[4]

Burchell first contends that the Board erred in concluding that he committed willful misconduct because employer presented no evidence to establish that he downloaded or viewed pornography while at work. Burchell also argues that while a workplace rule forbidding the viewing of pornography at work is reasonable, the same policy becomes unreasonable if it is extended to conduct occurring off employer's premises when the employee is not working and, therefore, it cannot support a finding of willful misconduct. We conclude that Burchell's arguments lack merit.

■ While the term "willful misconduct" under Section 402(e) is not defined in the Law, our Supreme Court has held that it includes those actions constituting a deliberate violation of the employer's rules or a disregard of the standard of behavior which the employer has a right to expect of an employee. *Frumento v. Unemploy-*

*ment Comp. Bd. of Review,* 466 Pa. 81, 83, 351 A.2d 631, 632 (1976). To establish willful misconduct for a violation of a work rule, the employer must establish the existence of the rule, its reasonableness, and its violation. *Conemaugh Mem'l. Med. Ctr. v. Unemployment Comp. Bd. of Review,* 814 A.2d 1286, 1288 (Pa.Cmwlth. 2003). Thereafter the burden shifts to the claimant to establish good cause for his actions. *Id.* Whether the claimant's actions constitute willful misconduct is a question of law subject to our plenary review. *Id.*

■ Here, the credited evidence established that employer had a work rule that prohibited the display of graphic obscene material on employer's computer and that Burchell knew or should have known about this policy. In addition, the credited evidence demonstrate that files and a CD containing pornographic material were found in the computer that Burchell used. This evidence supports the conclusion that Burchell was using employer's computer to download pornographic material in violation of employer's written policy and in disregard of the standard of behavior which the employer has a right to expect of an employee. Since the Board found that Burchell downloaded the material to the computer and left the CD in the computer, it is a necessary inference that Burchell also displayed the obscene material. Otherwise, the conduct of downloading the material or inserting the CD into the drive would be pointless.[5]

---

4. Based on the issues raised by Burchell, our scope of review is limited to determining whether the adjudication is in accordance with the law and whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

5. We also conclude that the terms "creation" and "preparation" could include the conduct of downloading as such results in the creation of a file on the computer, for purposes of accessing and viewing at a later time. Moreover, the rule is written broadly, clearly intending to be inclusive and not exclusive.

According to Burchell, however, employer's rule should only be applicable to conduct occurring during work hours, and, thus, since employer failed to prove that he downloaded or viewed the objectionable material while at work, it failed to prove that he violated employer's rule.[6] This argument is meritless in light of the express language of the rule. The relevant rule states that "Using a computer, computer system, computer network, or any other University property for the creation, design, manufacture, preparation, display, or distribution of any written or graphic obscene material is prohibited." Original Record, Item No. 15, Employer's Ex. C at 2. Clearly, the rule prohibits the use of employer's property in connection with graphic obscene material; violation of the rule is not contingent upon the conducts occurring at work. Rather, the rule is violated when employer's property is used in an unauthorized manner. Thus, since the credited evidence demonstrated that Burchell's laptop contained files and a CD with graphic obscene material, the Board could properly conclude that Burchell used his computer in violation of employer's rule. Burchell argues that such an interpretation of the rule is unreasonable, however, because it interferes with his freedom outside of the scope of his employment. We disagree. Whatever right claimant may have to view such material on his own time and with his own equipment, the University has every right to prohibit employees from using University property in a manner clearly not connected with work.

■ Burchell next argues that the Board erred in excluding evidence that employer failed to enforce its rules consistently. Burchell relies on this court's decision in *City of Beaver Falls v. Unemployment Comp. Bd. of Review*, 65 Pa.Cmwlth. 14, 441 A.2d 510 (1982) for the proposition that violation of an employer's rule does not constitute willful misconduct if the rule is not uniformly enforced. Assuming the Board erred in excluding such evidence, a close examination of *Beaver Falls* discloses that such evidence would not have changed the result in this case. In *Beaver Falls*, two claimants were discharged for their failure to comply with a municipal ordinance which required employees of the City of Beaver Falls to reside within the City. The Board affirmed a referee's decision holding that "inasmuch as the residency ordinance was not uniformly enforced, the claimants' actions did not evidence such a disregard for the employer's interests as to constitute willful misconduct." *Id.* at 511. In upholding the Board's order, this court stated

> Where a discharge based on the violation of such an ordinance has been established, we believe that the burden then shifts to the claimant to prove both that the ordinance was not enforced uniformly *and that a violation thereof was not an act which was contrary to a reasonable standard of behavior which an employer could expect of an employee.*

*Id.* at 512 (emphasis added). We concluded that the claimants had met both burdens there. *Id.* Although it is not contrary to reasonable standards of behavior for City employees to live outside City limits in the absence of a uniformly enforced ordinance establishing a residency requirement, it is obviously contrary to reasonable standards of behavior for an employee to use employer's property for downloading graphic obscene material, even absent an

---

6. Burchell does not argue that the material contained in the files and CD does not constitute "graphic obscene material."

express rule prohibiting such conduct. *Cf. Denardis v. Unemployment Comp. Bd. of Review*, 76 Pa.Cmwlth. 212, 463 A.2d 116 (1983) (claimant did not meet his burden of proving that his unauthorized personal use of employer's vehicle was not contrary to a reasonable standard of behavior expected of an employee). Therefore, in light of Burchell's clear deviation from the reasonable standard of behavior that employer had a right to expect, evidence that the rule was not uniformly enforced would not change the result and, therefore, the Board's error is harmless at most.

Accordingly, we affirm.

### ORDER

AND NOW, this 29th day of April, 2004, the order of the Unemployment Compensation Board of Review in the above captioned matter is hereby AFFIRMED.

DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. Although Edward Burchell, Jr., (Claimant) asserts that the University of Pittsburgh (Employer) discharged him for viewing "pornography" *while at work*, the majority does not address whether the record contains substantial evidence to support the Unemployment Compensation Board of Review's (UCBR) contrary finding, i.e., that Employer discharged Claimant for violating a policy which prohibits employees from using Employer's computers to display "obscene" material *at any time*. Even if Employer did discharge Claimant for violating the computer use policy, I disagree with the majority's holding that Employer met its burden of proving a violation of that policy.

### I. Reason for Discharge

As stated, the UCBR found that Employer discharged Claimant for violating

Employer's policy prohibiting the use of Employer's computers to display "obscene" material at any time, not just while at work. Claimant challenges this finding, asserting that he was discharged for a different reason. Thus, I submit that this court must address whether the record contains substantial evidence to support the UCBR's finding that Claimant was discharged for violating Employer's computer use policy.

On this matter, I initially point out that Employer *never* mentioned the computer use policy in its filings with the Unemployment Compensation (UC) Service Center. On May 7, 2002, Employer certified as true and correct, on a form requesting separation information, that Claimant was separated from employment because "Claimant violated company sexual harassment policy." (O.R., Item No. 4, ex. 8.) On August 23, 2002, on an "Employer Questionnaire" seeking the reason for Claimant's separation from employment, Employer did *not* mark the box indicating a "Rule Violation." Instead, Employer marked the box labeled "Other" and wrote, "sexual harassment as well as misusage [sic] of University own [sic] computer system." (O.R., Item No. 4, ex. 6 at 1.) On September 6, 2002, in speaking to a representative from the UC Service Center, Employer stated that Claimant was discharged for: "excessive tardiness, poor work performance and the sexual harassment issue." (O.R., Item No. 5, ex. 5.)

At the first hearing before the referee, to establish the reason for Claimant's discharge, Employer presented the testimony of David Schatz, Manager of Consulting Services for Computer Services and System Development. (R.R. at 14a.) Schatz, who is identified as EW1 in the following testimony, stated that Claimant was discharged by letter for inappropriate use of his time at work.

ET And how was [Claimant's] dismissal communicated to [Claimant]?

EW1 In writing [through] a letter drafted by HR [Human Resources] that I signed.

ET And was that on April 25, 2002?

EW1 I believe it was yes.

ET I'm going to show you a letter dated April 25, 2002[.] [I]s that the termination letter?

EW1 Yes. . . .

ET And in that letter do you outline the reasons for [Claimant's] termination?

EW1 Yes I do.

ET What—Why was [Claimant] terminated from his employment?

EW1 **Essentially it's for inappropriate use of his time. He was using his time to download material that was inappropriate under [Employer] guidelines.**

ET Explain to me [Claimant's job.] [H]ow did that work. . . .

EW1 If I might go into a little bit more detail there, our department[s] . . . can receive computer support one of 3 different ways. They can hire their own person. . . . They can use our central services . . . or the department[s] can contract with my department. . . . We hire the people. We screen them. We train them and we've placed them in department[s] based upon whether they had a 1 day a week contract, 2 day a week contract, 5 day a week contract, whatever.

ET And how was [Claimant] used. . . .

EW1 He was working in a couple departments. . . .

ET And when he is contracted out to a particular department is he expected to work their work hours, their work days?

EW1 Yes he is and those days are specified . . . by the department.

ET And if he's contracted for 7.5 hours a day is he expected to work 7.5 hours a day?

EW1 Yes he is[.] 7½ hour work day, 1 hour unpaid for lunch[,] is the University standard.

(R.R. at 14a–15a) (emphasis added). Thus, according to Schatz, Claimant was discharged for downloading inappropriate material during his 7.5–hour work day.

Schatz' testimony was corroborated by Kathleen Travers, who represented Employer at the hearing. Travers stated, "I would indicate that the termination letter clearly outlines the reasons for [Claimant's] termination and talks about *using work time* to gain access to obscene materials through the University computer system. . . ." (R.R. at 21a) (emphasis added).

To prove that Claimant downloaded inappropriate material *during his work day,* Schatz offered as evidence a list of files found on the laptop computer assigned to Claimant. (R.R. at 17a.) Claimant questioned Schatz about the list of files, but Schatz stated that he did not create the list and that he did not view the files on the list.

C Are you going to testify to what the files contained . . . ?

EW1 I can only testify to what the file names are and the size of them. I did not look at them myself.

C Did you create that document?

EW1 Mr. [William R.] Bergman created that document.

C Well then that would . . . be hearsay.

(R.R. at 18a.) Employer then requested a postponement of the hearing so that Em-

ployer could subpoena Bergman, and the referee granted the request. (R.R. at 18a.)

Bergman, who was Employer's Data Security Manager, testified at a subsequent hearing about the list of files. According to that testimony, Employer had asked Bergman to do an inventory of the hard drive of the laptop computer assigned to Claimant to see whether it contained any pornography. (R.R. at 20a.) In his inventory, Bergman listed file names that appeared to be pornographic, and Bergman confirmed that they were pornographic by viewing them. (R.R. at 22a–23a.) The inventory also contained the dates and times that the files were downloaded to the computer. (R.R. at 26a.)

Employer offered the list of files as evidence, but Claimant requested and received a continuance so that he could verify the file download dates, the days of the week and the times. (R.R. at 24a–25a.) In other words, Claimant specifically sought time to better address Employer's claim of willful misconduct by comparing the download dates and times with his work schedule and determining whether the list proved that he had downloaded the files *during his work hours*.

At the third hearing, Claimant presented evidence challenging the download dates and times shown on the list. In response, Schatz testified, *for the first time*, that Employer had a computer use policy prohibiting the display of "obscene" material on Employer's computers *at any time*. (R.R. at 27a, 33a.) Notably, after presenting the policy, Schatz *never* testified that Claimant violated that policy *or* that Employer discharged Claimant for violating that policy. (*See* R.R. at 32a–34a.)

Based on the foregoing, I conclude that the record does *not* contain substantial evidence to support the UCBR's finding that Employer discharged Claimant for violating Employer's computer use policy. The only evidence in the record about Claimant's discharge is that Employer discharged Claimant for sexual harassment, for excessive tardiness, for poor work performance and for downloading inappropriate material during his 7.5–hour work day.[1] However, the UCBR did not find that Employer discharged Claimant for any of these reasons.

## II. "Obscene" Material

Even if the record contained substantial evidence to support the UCBR's finding that Employer discharged Claimant for violating the computer use policy, Employer did not prove that Claimant violated that policy.

As indicated, Employer's policy prohibits the use of Employer's computers "for the creation, design, manufacture, preparation, display, or distribution of any written or graphic obscene material." (O.R., Item No. 15, Employer's ex. C at 2.) The UCBR found that Claimant violated this policy by "downloading pornographic material" from the internet and by "leaving" a CD containing "pornographic" movies in

---

1. I note: (1) Employer presented *no* evidence that Claimant violated a sexual harassment policy or engaged in sexual harassment; (2) Employer presented *no* evidence that Claimant was excessively tardy for work; (3) Employer presented *no* evidence that Claimant's work performance was poor; and (4) although Employer presented evidence relating to Claimant's download of inappropriate material to a laptop computer assigned to Claimant, Employer provided *no* evidence that Claimant downloaded inappropriate material during his 7.5–hour work day.

a computer. (Findings of Fact, No. 6.) However, "downloading" material from the internet is *not* the same as creating, designing, manufacturing, preparing, displaying or distributing that material. Similarly, "leaving" a CD in a computer is *not* the same as creating, designing, manufacturing, preparing, displaying or distributing the CD.[2]

Moreover, the UCBR clearly erred as a matter of law in determining that Claimant violated Employer's policy relating to "obscene" material based solely on Claimant's possession of "pornographic" material. The U.S. Supreme Court's case law indicates that "pornographic" material is *not* necessarily "obscene" material. *See Reno v. American Civil Liberties Union,* 521 U.S. 844, 874, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997) (stating that the First Amendment protects sexual expression that is indecent but not "obscene"); *see also Miller v. California,* 413 U.S. 15, 20 n. 2, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) (distinguishing "pornographic" and "obscene" materials).

Accordingly, unlike the majority, I would reverse.

---

**2.** The majority states that it is a "necessary inference" that Claimant also displayed the obscene material. (Majority op. at 1087.) However, with respect to findings of fact, our role as an appellate court is limited to determining whether they are supported by substantial evidence. It is *not* our role to make additional findings of fact by drawing necessary inferences from the UCBR's findings of fact.