**Mark A. HACKLER, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 21, 2011.

Decided July 15, 2011.

---

Sara A. Austin, York, for petitioner.

Shawn J. Jayman, Assistant Counsel, Harrisburg, for respondent.

BEFORE: COHN JUBELIRER, Judge, and McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY Judge COHN JUBELIRER.

Mark A. Hackler (Claimant) petitions for review of an Order of the Unemployment Compensation Board of Review (Board) that affirmed the Unemployment Compensation (UC) Referee's (Referee) Decision finding him ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1] On appeal, Claimant argues that his right to due pro-

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

cess was violated because the Referee failed to adequately assist him, as a pro se claimant, during the evidentiary hearing as required by 34 Pa.Code § 101.21. In the alternative, Claimant argues that the evidence relied upon by the Board was insufficient to support the finding that willful misconduct was the reason he was separated from his job. Because we agree with Claimant that the Referee failed to comply with 34 Pa.Code § 101.21, we reverse the Order of the Board and remand this matter to the Board for a new hearing.

Claimant worked as a mechanic at Marlin's Auto Center (Employer) and was separated from his employment on June 21, 2010. (Referee's Decision/Order at 1.) Claimant applied for UC benefits and submitted separation materials to the UC Service Center indicating that he worked to the best of his ability, but was discharged for unsatisfactory work performance without any warning. (Claimant Questionnaire, R. Item 2.) Employer also submitted materials to the UC Service Center confirming that it discharged Claimant for unsatisfactory work performance, but asserting that Claimant received daily warnings. (Employer Questionnaire, R. Item 4.) The UC Service Center found Claimant ineligible for benefits under Section 402(e) of the Law because it found that Claimant received numerous warnings and did not work to the best of his ability. (Notice of Determination, R. Item 5.) Claimant appealed, and a hearing was scheduled before a Referee.

 At the hearing, Claimant and Roberta Waltersdorff, co-owner of Employer, appeared pro se and submitted testimony. Employer testified that Claimant was fired because of customer complaints about his work performance and an irregularity in Claimant's application of a state inspection sticker on Claimant's vehicle. Claimant seemed confused at the hearing, but attempted to refute Employer's statements. The Referee found that Claimant committed willful misconduct and affirmed[2] the determination of the UC Service Center. (Referee's Decision/Order.) Claimant appealed to the Board, which affirmed the Decision of the Referee. In concluding that Claimant committed willful misconduct and was ineligible for benefits under Section 402(e) of the Law, the Board made the following factual findings:

1. The claimant was last employed as a full-time mechanic by Marlin's Auto Center from January 2010 at a final rate of $16.00 an hour and his last day of work was June 21, 2010.

2. On June 18, 2010, a customer brought his car back to the auto center after the claimant had performed work on the car. The customer brought the car back to the auto center because the job had not been done correctly. In addition, to the above complaint, five other customers had brought back their cars after the claimant had performed work on each of their respective cars.

3. The employer also cited to an incident wherein the claimant was trying to place an inspection sticker on his own car, which had bald tires. The tires in question did not contain any tread.

4. When the employer confronted the claimant about the matter, the employer would not allow the claimant to place the inspection sticker on his car. The employer also explained to the claimant the ramifications of the claimant driving his vehicle with

2. The Referee mistakenly said his denial of benefits reversed the determination of the UC Service Center. The Board noted this discrepancy. (Board's Decision and Order.)

bald tires. The claimant indicated that he had "good" tires at home.

5. A meeting was conducted with the claimant on June 21, 2010. At that time, the claimant was informed that the employer would no longer need his services.

6. The claimant was terminated because of customer complaints and because he was jeopardizing the employer's state inspection license.

(Board's Decision and Order at 1–2.) With regard to Claimant's allegation that he was denied due process at the hearing, the Board stated that although "the Referee may have been short with" him, Claimant had an opportunity to present his case and was in no way prevented from offering evidence. (Board's Decision and Order at 3.) Claimant now petitions this Court for review.[3]

On appeal, Claimant argues that the Referee denied him "due process" at the hearing, which essentially challenges whether the Referee conducted the hearing in accordance with the applicable regulation at 34 Pa.Code § 101.21. Alternatively, Claimant argues that the evidence was insufficient to support the Board's finding that he committed willful misconduct. We first address whether the Referee conducted a full and fair hearing consistent with the requirements of 34 Pa.Code § 101.21.

■ The Board argues that the Referee conducted the hearing consistently with the requirements of Section 101.21 because the Referee "apprise[d Claimant] of his rights to be represented by counsel, to present testimony and evidence and to cross-examine witnesses." (Board's Br. at

7–8.) 34 Pa.Code § 101.21 provides as follows:

> Where a party is not represented by counsel the tribunal before whom the hearing is being held should advise him as to his rights, *aid him in examining and cross-examining witnesses, and give him every assistance* compatible with the impartial discharge of its official duties.

*Id.* (emphasis added). In interpreting this regulation, the courts have held that, in addition to advising pro se parties of their rights and aiding them in questioning witnesses, referees should reasonably assist pro se parties to elicit facts that are probative for their case. *Bennett v. Unemployment Compensation Board of Review,* 66 Pa.Cmwlth. 455, 445 A.2d 258, 259–60 (1982). In *Bennett,* this Court instructed that:

> The referee has a responsibility ... to assist a pro se claimant at a hearing so that the facts of the case necessary for a decision may be adequately developed to insure that compensation will not be paid in cases in which the claimant is not eligible and that compensation will be paid if the facts, *thoroughly developed,* entitled the claimant to benefits.

*Id.* (internal citation omitted) (emphasis in original). While the referee "need not advise a party on evidentiary questions or on specific points of law," the referee "must act *reasonably* in assisting in the development of the *necessary* facts." *Id.* at 260 (first emphasis added); *see also, Unemployment Compensation Board of Review v. Ceja,* 493 Pa. 588, 611–12, 427 A.2d 631, 643 (1981) (plurality opinion) (stating that

3. The scope of "review is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether a practice or procedure of the Board was not followed or whether the findings of fact are supported by substantial evidence in

the record." *Western and Southern Life Ins. Co. v. Unemployment Compensation Board of Review,* 913 A.2d 331, 334 n. 2 (Pa.Cmwlth. 2006). *See* Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

referees have an affirmative duty to afford claimants a reasonable opportunity to challenge hearsay evidence, and that a pro se party must be given "every assistance compatible with the impartial discharge of [the tribunal's] official duties," (quoting 34 Pa.Code § 101.21)).[4]

In determining whether the referee has given a pro se claimant reasonable assistance at an evidentiary hearing, the courts consider the referee's approach in questioning the parties. Our Supreme Court, in *Ceja,* addressed the issue of "the manner in which the hearing was conducted." *Id.* at 590, 427 A.2d at 632. In *Ceja,* "the referee's conduct of the hearing fell far short of protecting the rights of the unrepresented claimant" because the referee interrupted the claimant when she attempted to object to hearsay evidence offered by the employer. *Id.* at 613–14, 427 A.2d at 644.[5] The *Ceja* plurality opinion found that the referee "fell short of the regulatory mandate" set forth in Section 101.21 because, instead of aiding the claimant's attempt to stop the employer from reading unsubstantiated hearsay documents into the record, the referee told the claimant to "[l]et him finish." *Id.* at 612–13, 427 A.2d at 644. Writing for the plurality, Justice Kauffman pointed out that the claimant received "virtually no meaningful opportunity to challenge the hearsay documents ... much less cross-examine the declarants." *Id.* Although the claimant made

"one attempt" to challenge the hearsay evidence, the referee "rebuffed" her. *Id.* After the employer testified, the claimant again tried to add to her own testimony, but "the referee replied in a manner designed to abbreviate claimant's reply," which led to a "confused and convoluted account" from the claimant. *Id.* at 613, 427 A.2d at 644. Justice Kauffman concluded that, "[i]nstead of making a sincere effort to unravel claimant's testimony ... the referee ... in effect cross-examined her" in a way that favored the employer. *Id.*[6]

■ Another component of a referee's reasonable compliance with the regulatory obligation to assist unrepresented parties is guiding the parties to bring out facts of which the referee knows or should know. For example, the claimant in *Bennett,* a hotel bartender, testified that she experienced sexual harassment on the job. *Bennett,* 445 A.2d at 260 n. 6. Documentation in the record corroborated her testimony. *Id.* However, the referee "did not ask [the pro se claimant] questions sufficient to enable her to emphasize the factual aspects of her contentions," although doing so might have enabled the claimant to show "a necessitous and compelling cause for her voluntary termination of her employment." *Id.* at 260. This Court found that the referee "should have more *thoroughly* and *reasonably* extracted testimony on these points in the interests of fairness."

4. While *Ceja* has no precedential value, we find the *Ceja* plurality opinion persuasive on the points cited herein.

5. The referee accepted into evidence several third-hand reports of insubordinate conduct on the claimant's part without alerting her that she could object to them as hearsay. *Ceja,* 493 Pa. at 591–92, 427 A.2d at 633. Yet the referee knew that the claimant had "expressly denied calling her supervisor an 'S.O.B.'," and that she had characterized the documents as "inaccurate and 'twisted'." *Id.*

6. A plurality of the *Ceja* Court agreed that "an unemployment compensation referee has an obligation to advise uncounseled claimants of their rights.... In order to fulfill this obligation, a referee must advise a claimant of his right to be represented by counsel, to offer witnesses, and to cross-examine adverse witnesses." *Vann v. Unemployment Compensation Board of Review,* 508 Pa. 139, 151, 494 A.2d 1081, 1087 (1985) (Larsen, J. concurring) (internal citation omitted).

*Id.* at 260 n. 6 (emphasis in original). Therefore, this Court reversed the Board's order and remanded the case for an evidentiary hearing. *Id.* at 260.

Similarly, in *Tate v. Unemployment Compensation Board of Review,* 83 Pa. Cmwlth. 291, 477 A.2d 54, 55 (1984), this Court found that there was no "full and fair hearing" where the referee did not assist the pro se claimant to meet her burden to show that impending homelessness was the compelling reason why she left her job. *Id.* In *Tate,* the claimant was living in a campground tent as winter approached. *Id.* Her testimony suggested that she would have become homeless if she had not moved away to rejoin her husband, who had accepted a job in a distant town. *Id.* However, "the referee ... failed to ask [the claimant] important questions concerning the reasons for her termination of her employment ... which were suggested by her testimony." *Id.* at 56. Although the prospect of homelessness might have supplied a "compelling economic reason[ ]" for the claimant to leave her job, "the referee asked no more questions about this issue." *Id.* at 55. Accordingly, this Court in *Tate* remanded the case to the Board for further proceedings. *Id.* at 57.

■ In this case, the evidentiary hearing was conducted in a manner similar to those found deficient in *Bennett, Ceja,* and *Tate.* Like the referees in *Bennett* and *Tate,* who did not assist the claimants to bring out favorable information in the record, here the Referee did not question Claimant on issues that the Referee knew or should have known Claimant wanted to pursue. For example, Claimant raised several issues in his Petition to Appeal, a document that the Referee placed into evidence. (Hr'g Tr. at 4, R. Item 9.) Specifically, in the attachment to Claimant's Petition to Appeal, Claimant stated that he

experienced verbal abuse on the job, affirmed that he always did honest work, and denied that he received "any type of warning." (Claimant's Petition for Appeal at 2, R. Item 6.) However, this information was never presented at the hearing, and the Referee did not elicit this information from Claimant through the very strict question-and-answer format the Referee employed during Claimant's testimony. (Hr'g Tr. at 9–11.) Additionally, as in *Tate,* the Referee here bypassed "important questions ... which were suggested by ... testimony." *Tate,* 477 A.2d at 56. For instance, the Referee did not ask Claimant about his initial attempt to deny willful misconduct, (Hr'g Tr. at 3), or about his version of what occurred at his place of employment. Instead, the Referee constrained Claimant's testimony, asking Claimant specific questions which did not allow for open-ended answers. This manner of proceeding did not elicit significant testimony regarding issues set out in Claimant's Petition to Appeal or those about which Claimant tried to present testimony during other parts of the hearing. Claimant did not have an opportunity to speak, unconstrained by the Referee's questions, until the end of the hearing after the testimony had closed. At that point, Claimant tried to present his side of what occurred but, because the testimony was closed, the Referee did not permit Claimant to set forth his side of the case. This falls short of the standard expressed in Section 101.21 and affirmed by this Court in *Tate* and *Bennett.*

Additionally, as in *Ceja,* the Referee interrupted Claimant's questioning of Employer during cross-examination with regard to the inspection incident and prevented him from completing that line of questioning. The following exchange took place:

C As far as inspecting my vehicle, did anybody other than myself put depth gauge on the tires and record anything as far as them being bald?

E Marlin doesn't need a depth gauge, Adam. That was clearly a case where you could see that the tires were bald. There wasn't any tread to be measured.

R Did you see those tires, ma'am?

E Yes, I did.

R Thank you. Asked and answered. Next question.

C And *I recall inspecting my vehicle after I did replace the tires* because that was . . .

R Sir, it's not your opportunity . . .

C I'm sorry.

R . . . to testify.

C Oh.

R It's your opportunity to ask questions only. Is that understood?

C Yes, sir. Was [it] ever brought to my attention that you had vehicles coming back prior to the date that I was terminated?

E Absolutely.

R Asked and answered.

(Hr'g Tr. at 8–9 (emphasis added).) The record suggests that the Referee anticipated the effect of his abrupt manner in conducting the hearing. At the outset, the Referee stated that "[a]ny questions I ask . . . are not meant to chill, prevent, preclude, substitute for or impair you for the direct relevant testimony." (Hr'g Tr. at 3.) Yet, although the transcript indicates that the Referee began the hearing with a lengthy discussion of rights and procedures, (Hr'g Tr. at 1), and paused often in the course of the hearing to ask whether the parties understood, had questions, or had anything to add, the Referee intervened and distracted Claimant's train of thought nearly every time Claimant was

invited to speak. Just as in *Ceja*, the many interruptions deprived Claimant of the process he was due under 34 Pa.Code § 101.21.

The record also establishes that after the Referee explained the rights of the parties to testify, to introduce evidence, and to cross-examine witnesses, and after he expounded on the complex legal burden of proof in meticulous detail, (Hr'g Tr. at 1–3), Claimant indicated to the Referee that he did not understand; however, the Referee quickly glossed over Claimant's befuddlement and cut Claimant's testimony off twice when Claimant tried to refute the charge of willful misconduct:

R . . . And now let the record reflect that I have advised the parties [of] the nature of the proceeding—evidentiary, the section of Law—402(e), the legal standard—willful misconduct, the burden of proof shifted, protocol I tend to follow. [Claimant], any questions, sir?

C I'm a little gray to this so I apologize but I never had to do this before but I'm just really confused on the whole subject because as far as I was terminated from my employment. And you know like *I didn't do anything like willful misconduct.*

R That would be up to me to determine . . .

C Okay.

R . . . due to the proceeding.

C Yeah, I understand.

R Understood, sir?

C Yeah, I just . . .

R You'll have the opportunity to tell your side of the story as will the Employer.

C Okay.

(Hr'g Tr. at 3–4 (emphasis added).) These interruptions are the first two of no less than ten points in the transcript where the Referee interrupted Claimant and de-

ferred his testimony. (*See* Hr'g Tr. at 3–4, 8–10, 12.) [7]

While we appreciate the heavy caseload referees are faced with in this economic climate and the resulting need for referees to expedite hearings, referees must nonetheless comply with the legal requirement of 34 Pa.Code § 101.21 by assisting pro se claimants to focus on the issues and testimony that will be relevant to their eligibility for benefits. In this case, we must conclude that the Claimant was prejudiced by the Referee's failure to conduct the hearing in accordance with the requirements of 34 Pa.Code § 101.21. The Referee gave credence to Employer's account of the vehicle inspection incident, which we note was not included in Employer's separation materials as a reason for discharge, while neglecting to follow up on Claimant's attempts during the hearing to present an alternate version of the events. The Board found that "[t]he claimant was terminated because of customer complaints and because he was jeopardizing the employer's state inspection license." (Board Op. at 2.) However, the Referee not only did not assist Claimant, but Claimant's attempts to offer contrary evidence were stifled. The Board failed to perceive this irregularity and, for that reason, we conclude that the Board erred in affirming the Referee's Decision and finding that the Referee did not violate Claimant's right to a fair hearing under 34 Pa.Code § 101.21.

■ Accordingly, we must reverse the Order of the Board and remand for a new hearing.[8]

### ORDER

NOW, July 15, 2011, the Order of the Unemployment Compensation Board of

---

7. The record indicates that Claimant attempted to testify as to the reason why he ceased working on the day he was discharged by responding that he "was not allowed to" when the Referee asked him whether he worked for two weeks after being notified of his discharge. (Hr'g Tr. at 10.) The Referee then rejected Claimant's answer by simply repeating the same question: "Did you work until July 1?" (Hr'g Tr. at 10.) This time, Claimant responded, "No, Sir," without explanation. (Hr'g Tr. at 10.) The Referee proceeded to question Claimant about the exact date of a conversation, and then returned to the issue of whether Claimant could have worked longer. The Referee questioned Claimant regarding whether he was "given the option of work[ing] two weeks? I want you to answer the question ... I'm asking, not the question ... you want to answer," to which Claimant responded, "Yes, Sir. Yes, Sir." (Hr'g Tr. at 10.) The Referee then interjected, "Don't answer before I ask the question. Were [you] given the option to work until the 1st of July yes or no?" Claimant replied, "Yes." (Hr'g Tr. at 10.) Similar to *Ceja,* the Referee's manner appears "designed to abbreviate claimant's reply." *Ceja,* 493 Pa. at 613, 427 A.2d at 644.

8. Because of our disposition, we need not address the issue of the sufficiency of the record evidence. However, we note that while Employer's Questionnaire lists reasons for Claimant's discharge, nowhere does it mention Claimant's alleged misconduct in placing an inspection sticker on his own vehicle when it had bare tires. Employer solely focused on Claimant's alleged poor workmanship in fixing its customers' cars and the alleged harm that could result to Employer's reputation. We note that in determining whether a claimant committed willful misconduct, the reason given by an employer to a claimant for his discharge is typically considered. *See Diaz v. Unemployment Compensation Board of Review,* 95 Pa.Cmwlth. 137, 504 A.2d 973, 974 (1986); *Burchell v. Unemployment Compensation Board of Review,* 848 A.2d 1082, 1084 (Pa.Cmwlth.2004) (Friedman, J., dissenting) (pointing out that the policy claimant allegedly violated was "never mentioned [by the employer] in its filings with the Unemployment Compensation (UC) Service Center.") We also note that discrepancies between the initial report and the hearing testimony affect the weight that may be given to that testimony. *Oliver v. Unemployment Compensation Board of Review,* 5 A.3d 432, 438–39 (Pa.Cmwlth.2010) (en banc).

Review in the above-captioned matter is hereby **REVERSED** and this matter is **REMANDED** for a new hearing consistent with this Opinion.

Jurisdiction relinquished.