# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Junsai Xu,                              :
                   Petitioner      :
                             :
           v.                 :    No. 874 C.D. 2015
                             :    SUBMITTED:  December 4, 2015
Unemployment Compensation     :
Board of Review,                  :
                   Respondent    :

BEFORE:     HONORABLE BONNIE BRIGANCE LEADBETTER, Judge[1]
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**JUDGE LEADBETTER**                 **FILED:  February 19, 2016**

Claimant Junsai Xu, *pro se*, petitions this Court for review of an order of the Unemployment Compensation Board of Review (Board), which affirmed a referee's decision and determined that Xu is ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law)[2] for reasons of willful misconduct connected with his work.

---

[1] This case was assigned to the opinion writer on or before January 31, 2016, when Judge Leadbetter assumed the status of senior judge.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. 1937 (2897), *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law provides that an employee is ineligible for compensation for any week in which his unemployment is due to discharge for willful misconduct connected with his work.

The Board, which is the ultimate factfinder in cases of unemployment compensation law,[3] adopted the findings of the referee and found in pertinent part as follows. Claimant was last employed in a full-time capacity by Sands Bethworks Gaming, LLC (Employer) as a table games dealer from October 18, 2010, until October 30, 2014. Employer's rules of conduct provide for discipline levels based on the severity of the infraction and for a progressive path of discipline. Level II infractions result in "an immediate Career Decision Day and Last & Final Performance Improvement Plan" and they include "'arguing or being rude with guests or another team member.'" Finding of Fact (FF), No. 2. A second Level II infraction occurring within twelve months of a "Career Decision Day" calls for discharge. *Id.* Claimant knew of Employer's rules regarding conduct and discipline levels.

On December 24, 2013, Employer issued Claimant a written warning and performance improvement plan due to his insubordination in refusing to follow instructions from his supervisor. On February 26, 2014, Employer issued Claimant "a Career Decision Day and Last & Final Performance Improvement Plan" because he was rude to customers and argumentative with his supervisors. FF, No. 5. On August 19, 2014, Employer issued Claimant another "Career Decision Day and Last & Final Performance Improvement Plan" because he argued with customers and used profanity. FF, No. 6. Employer did not terminate Claimant from employment at this juncture because the customer had started the confrontation, but Employer warned Claimant that any more policy infractions would result in discharge.

---

[3] *See Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383 (Pa. 1985).

On October 27, 2014, a manager took Claimant to the side and instructed him regarding the proper placement of his hands on the game table. Claimant argued with a supervisor about his hand placement. Claimant returned to the game table and confronted a supervisor whom he accused of making a report to the manager.[4] Claimant and the supervisor then had a "verbal altercation" on the floor of the casino. FF, No. 11. Employer launched an investigation into the episode, which included review of surveillance video of Claimant's interactions with the manager and supervisor. Employer disciplined Claimant and the supervisor for arguing. Employer thereafter terminated Claimant from employment "for a second Level II infraction within 12 months of receiving a Career Decision Day and Last & Final Performance Improvement Plan." FF, No. 14.

The Department of Labor and Industry disqualified Claimant from benefits under Section 402(e) of the Law. On appeal, the referee affirmed, reasoning that, (1) in the last incident that led to Claimant's termination, he argued with the manager and then a supervisor while on the floor of the casino; (2) he tried to justify his actions by saying that, in the five years that he had been employed at the casino, he had not been corrected on his hand placement at the game table; and (3) he did not have good cause for his conduct. Claimant appealed to the Board from the referee's decision and also filed a request for a remand hearing. The Board remanded the matter to the referee to serve as a hearing officer so that Claimant could "testify and submit evidence with the aid of an interpreter fluent in the *Mandarin* Chinese dialect, rather than Cantonese Chinese dialect."[5]

---

[4] We note, for purposes of clarity, that one manager and two supervisors were involved in this last incident. *See* Notes of Testimony, Referee's Hearing dated December 11, 2014, at 9-10.

[5] Claimant's interpreter at the first hearing had apparently been fluent in the Cantonese dialect.

(Board Decision, mailed January 14, 2015, at 1) (emphasis in original). After the remand hearing on January 30, 2015, the Board issued its decision mailed May 4, 2015, adopting and incorporating the referee's findings of fact and conclusions of law. The Board noted, *inter alia*, that Claimant: (1) "received a full and fair hearing," (2) failed to "offer sufficient credible testimony demonstrating good cause for engaging in an altercation with a manager and then with a supervisor on the casino floor during the final incident," and (3) "failed to credibly establish that the employer deprived him of any rights." (Board Decision, mailed May 4, 2015, at 1). The Board thus affirmed the referee's decision that Claimant was ineligible for benefits under section 402(e).[6]

On appeal to this Court, Claimant raises two issues in the "Statement of Questions Involved" portion of his brief. He first argues: "There is the question that the law enforcement level is low in the unemployment compensation board of review." Claimant's brief at 2. A thorough reading of other portions of Claimant's *pro se* brief satisfies us that, by raising this issue, he attempts to argue unfair treatment by the referee.[7] Claimant complains that the referee did not give him the

---

[6] Although the term willful misconduct is not statutorily defined, case law has defined the term as the wanton or willful disregard of the employer's interests, the deliberate violation of the employer's rules, the disregard of standards of behavior that an employer can rightfully expect of its employee, or negligence that indicates an intentional disregard of the employer's interest or the employee's duties or obligations. *Henderson v. Unemployment Comp. Bd. of Rev.*, 77 A.3d 699, 718 (Pa. Cmwlth. 2013). Once the employer proves that the claimant committed willful misconduct through his or her violation of a work rule, the burden of proof shifts to the claimant to show good cause for his or her conduct. *Id.* at 718-19.

[7] Pennsylvania Rule of Appellate Procedure 2116 provides in relevant part: "The statement [of questions involved] will be deemed to include every subsidiary question fairly comprised therein. No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Again, where we can discern the argument raised by Claimant, we will not deem the issue waived. *Russell v. Unemployment Comp. Bd. of Rev.*, 812 A.2d 780 (Pa. Cmwlth. 2002).

4

opportunity to state his "defense" at the first hearing, *id.*, that the referee's decision was dated just one day after the first hearing, that the referee interrupted him during the second hearing several times and accused him of being rude, that the referee had "absolutely no the [sic] professional knowledge of holding a hearing," *id.* at 3, that the referee's awards "were unexpectedly alike," *id.* at 1, and that the referee "took evidence from [Claimant's] statement and committed perjury," *id.*

However, the record is clear that, at the first hearing as well as the second hearing, the referee gave Claimant a sufficient opportunity to tell his side of the incident leading to his discharge. *See* Notes of Testimony, Hearing of December 11, 2014, at 15-17; Remand Hearing of January 30, 2015, at 4-11.[8] Moreover, the fact that the referee acted quickly in handing down her decision after the initial hearing in this matter does not, by itself, mean she did not render a fair decision. In any event, the Board granted Claimant's request for a second hearing with a different interpreter and ultimately determined that Claimant "received a full and fair hearing." (Board Decision, mailed May 4, 2015, at 1.) The Board's determination in this regard is not compromised by the fact that, at the second hearing, the referee deemed Claimant's behavior rude. Instead, the referee returned the record to the Board; the Board reviewed the testimony from the second hearing and then of its own accord issued its determination affirming the referee's decision. The fact that the referee and the Board found facts adverse to

---

[8] We note that 34 Pa. Code § 101.21 relates to conduct of hearings before the tribunal. We explained in *Hackler v. Unemployment Compensation Board of Review*, 24 A.3d 1112, 1115 (Pa. Cmwlth. 2011) (citation omitted), that "[i]n interpreting this regulation, the courts have held that, in addition to advising *pro se* parties of their rights and aiding them in questioning witnesses, referees should reasonably assist *pro se* parties to elicit facts that are probative for their case." The referee did as much herein.

Claimant does not render the Board's determination adopting the referee's findings and conclusions in any way improper. Claimant's first issue lacks merit.

Next, Claimant asserts: "There are the questions that a lot of staff has all no [sic] the rule of law consciousness in casino." Claimant's brief at 2. Again, from a review of other portions of Claimant's brief, he appears to be arguing that he did not commit the willful misconduct of which he was accused. Claimant maintains that he "did the most basic action that I have made 100,000 times" (presumably relating to his hand placement on the gaming table), Claimant's brief at 2, but that he was nonetheless reprimanded and then accused of being rude. The Board, however, found that Claimant "did not offer sufficient credible testimony demonstrating good cause for engaging in an altercation with a manager and then with a supervisor on the casino floor during the final incident." (Board Decision, mailed May 4, 2015, at 1). As the ultimate factfinder in unemployment compensation cases, the Board is entitled to make its own decisions regarding witness credibility and weight of the evidence. *Henderson v. Unemployment Comp. Bd. of Rev.*, 77 A.3d 699, 710 n.5 (Pa. Cmwlth. 2013). Here, Claimant was fired for arguing with supervisors on the casino floor, not for his hand placement. Because he was fired for his inappropriate reaction to being corrected, it is irrelevant whether he believes he should have been corrected in the first place. We discern no merit in Claimant's second issue.

Accordingly, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge

6

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Junsai Xu,                                          :
                   Petitioner              :
                                        :
                v.                              :   No. 874 C.D. 2015
                                          :
Unemployment Compensation               :
Board of Review,                                 :
                   Respondent           :

# O R D E R

AND NOW, this 19th day of February, 2016, the order of the Unemployment Compensation Board of Review is hereby affirmed.

 

                                        _____
                                        **BONNIE BRIGANCE LEADBETTER,**
                                        Judge