IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kelly Gribschaw,               :
           Petitioner     :
                             :
      v.                  :    No. 1177 C.D. 2020
                             :    Argued: February 9, 2022
Unemployment Compensation    :
Board of Review,                :
          Respondent    :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE ELLEN CEISLER, Judge
                 HONORABLE LORI A. DUMAS, Judge
                 HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                                FILED: May 10, 2022

       Kelly Gribschaw (Claimant) has petitioned this Court to review the adjudication of the Unemployment Compensation Board of Review (Board), which affirmed the decision of the Referee that Claimant was ineligible for unemployment compensation benefits under Section 402(b) of the Pennsylvania Unemployment Compensation Law[1] (UC Law) and liable for a fault overpayment for certain benefits paid to Claimant. Because we conclude that Claimant was denied an opportunity to develop a factual record before the Referee, we reverse and remand to the Board for additional proceedings consistent with this Memorandum Opinion.

---

[1] Section 402(b) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b).

## BACKGROUND

Claimant was employed as a registered nurse for Excela Health Frick Hospital (Employer). After contracting COVID-19, Claimant was on approved leave from March 25, 2020, to May 18, 2020. While on leave, Claimant applied for and received UC benefits. *See* Internet Initial Claims, 3/23/2020, at 1-4. Upon return to work on Tuesday, May 19, 2020, Claimant submitted her resignation to Employer, effective Tuesday, May 26, 2020. *See* Employer Separation Information, Claimant's Resignation Email, 5/19/20. Upon receipt, Employer waived the resignation notice period and terminated Claimant's employment effective immediately. *See id.*, Unemployment Insurance State Inquiry, 6/11/20, at 2 (unpaginated).[2]

Claimant re-opened her claim, but the Pennsylvania Department of Labor and Industry (Department) determined that Claimant was ineligible for UC benefits, for the period ending May 23, 2020,[3] and further that Claimant was liable for a $934.00 fault overpayment of benefits for the periods ending May 23, 2020, and May 30, 2020. *See* Notice of Determination & Notice of Determination of Overpayment of Benefits, 7/2/20. Claimant timely appealed these determinations.

Following a hearing, at which Claimant appeared *pro se*, the Referee modified the Department determinations. *See* Referee's Decision/Order, 8/5/20. Based on the Referee's finding that Employer effectively terminated Claimant on May 19, 2020, the Referee concluded that Claimant was eligible for benefits for the period ending May 23, 2020. *Id.* at 2 (unpaginated). However, because Claimant

---

[2] For clarity, Employer did not terminate Claimant for cause, but accepted Claimant's resignation effective immediately because Employer determined that Claimant was no longer needed due to low hospital census.

[3] For purposes of the UC Law, a benefit week extends from Sunday to Saturday. Section 4(z) of the UC Law, 43 P.S. §753(z); *DeMoss v. Unemployment Comp. Bd. of Rev.*, 454 A.2d 1146, 1148 (Pa. Cmwlth. 1983).

did not report to the Department that she had submitted a resignation, effective May 26, 2020, the Referee concluded that Claimant remained liable for a $558.00 fault overpayment for the period ending May 30, 2020. *Id.*

Claimant appealed to the Board, which adopted the Referee's findings and affirmed. Claimant then appealed to this Court.

## ISSUES

There are three issues before the Court.[4] First, Claimant asserts that her resignation should not constitute a disqualifying act, thus rendering her ineligible for unemployment benefits for the period ending May 30, 2020. *See generally* Claimant's Suppl. Br. According to Claimant, because she would have completed her full-time work schedule *prior* to the effective date of her resignation, she should remain eligible for benefits. *See generally id.*

In response, the Board contends that the effective date of Claimant's resignation constitutes a disqualifying act, thus making her ineligible for benefits for the period ending May 30, 2020. *See* Board's Suppl. Br. at 2-3 (citing in support *DeMoss v. Unemployment Comp. Bd. of Rev.*, 454 A.2d 1146 (Pa. Cmwlth. 1983)). In particular, the Board suggests that a disqualifying act (such as a resignation) that occurs *at any point* in a benefit period renders a claimant ineligible for the entire

---

[4] Claimant presented two issues for our consideration. *See* Claimant's Br. at 1-2. However, after an initial review, this Court directed the parties to file a supplemental brief addressing:

> Whether a claimant who is seeking unemployment benefits for a week in which she would have worked but for the employer's decision to terminate her employment is nonetheless disqualified from receiving benefits for that week under Section 402(b) of the [UC Law, 43 P.S. §802(b)], because, prior to employer's decision to terminate her, she tendered her resignation effective on a date before the end of the benefit week at issue as established by Section 4z of the [UC ] Law, 43 P.S. §753(z), but after she would have completed all of her scheduled shifts for the week had employer not terminated her employment the week prior.

Cmwlth. Ct. Order, 11/2/21. Both parties complied with this Court's Order.

benefit period. *See* Board's Suppl. Br. at 5 (citing in support *Sincavage v. Unemployment Comp. Bd. of Rev.*, 255 A.3d 686 (Pa. Cmwlth. 2021)). Thus, the Board concludes, it is irrelevant whether Claimant would have worked during the benefit week prior to her resignation. *See id.*

Second, Claimant asserts that because the Referee failed to assist her in developing a record, there is not substantial evidence supporting the Board's conclusion that she is ineligible for benefits for the period ending May 30, 2020. *See* Claimant's Br. at 11-15. In supporting this assertion, Claimant suggests that she would have completed her scheduled work prior to the date of her resignation, that her appeal from the Department's determinations effectively put the Referee on notice of this schedule, and that Employer's testimony confirmed this. *See id.* at 13. Thus, Claimant requests that we remand this matter for a new hearing. *See* Claimant's Br. at 16.

In response, the Board asserts that Claimant's unemployment was voluntary for the period ending May 30, 2020, because the effective date of her resignation, Tuesday, May 26, 2020, occurred within that period. Board's Br. at 5. In addition, according to the Board, the Referee had no reason to suspect that Claimant worked an "unconventional" schedule and, therefore, had no reason to inquire whether she would have completed her full-time hours prior to the effective date of her resignation. *See* Board's Br. at 8. Thus, the Board concludes, Claimant's unemployment for the period ending May 30, 2020, was a result of her resignation, not her termination. Board's Br. at 8-9.

Third, Claimant asserts that there is no evidence to support a finding that Claimant possessed the requisite degree of scienter for a fault overpayment determination. Claimant's Br. at 17. According to Claimant, because she reported

4

her May earnings, testified that she believed that she was involuntarily separated from Employer, and the Referee failed to question Claimant on her state of mind, the Board erred in concluding that she intended to defraud or mislead the Department. Claimant's Br. at 17-20. In response, the Board contends that Claimant waived this issue because she did not raise it on appeal with the Board. Board's Br. at 9.

**DISCUSSION**

Our review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. *Miller v. Unemployment Comp. Bd. of Rev.*, 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Shrum v. Unemployment Comp. Bd. of Rev.*, 690 A.2d 796 (Pa. Cmwlth. 1997).

**1. Claimant may be entitled to benefits**

We will first address whether Claimant is disqualified *per se* from receiving unemployment compensation for a benefit week, during which she committed a disqualifying act, but in which she was prepared to complete her full-time schedule, but for her termination by Employer. Under these unique circumstances, we decline to recognize a *per se* disqualification. Rather, we hold that if a claimant can establish that she would have completed the equivalent of an entire work week, prior to any disqualifying act, then a claimant may be eligible for benefits.

Section 402(b) provides that "[a]n employe shall be ineligible for compensation for any week . . . [i]n which [her] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature[.]" 43 P.S. §

5

802(b).[5] This Court has interpreted the phrase "any week" as "denoting a legislative intent that an unemployed worker show eligibility for benefits during the entire period from Sunday through Saturday." *Sincavage*, 255 A.3d at 688 (citation omitted). There are no provisions in the UC Law that address a claimant's eligibility for partial week compensation. Thus, it is the general rule that where a claimant commits a disqualifying act, at any point in the benefit week, the claimant shall be ineligible for benefits. *DeMoss*, 454 A.2d at 1148.

The UC Law defines "week" as "any calendar week ending at midnight Saturday, or the equivalent thereof[.]" 43 P.S. §753(z). The phrase "the equivalent thereof" is applicable here.[6] The phrase clearly implies recognition by the General Assembly that not all full-time employees work traditional, 40-hour schedules and that some full-time employees will work unconventional schedules. *See also, e.g.*, 34 Pa. Code § 65.73 (providing several methods of determining "full-time work"); *Bloomsburg Univ. of Pa. of the State Sys. of Higher Educ. v. Unemployment Comp. Bd. of Rev.*, 692 A.2d 586 (Pa. Cmwlth. 1997) (reversing the Board's determination that a 37.5-hour work week is part time).

[5] A claimant seeking unemployment compensation benefits bears the burden of establishing either that: (1) her separation from employment was involuntary or (2) her separation was voluntary, but she had cause of a necessitous or compelling nature that led her to discontinue the relationship. *Watkins v. Unemployment Comp. Bd. of Rev.,* 65 A.3d 999, 1004 (Pa. Cmwlth. 2013). If a claimant is unable to prove that she had a necessitous or compelling cause for her voluntary separation, the claimant has committed a disqualifying act and will be deemed ineligible for benefits. 43 P.S. §802(b).

[6] In statutory interpretation, our goal is to ascertain and effectuate the intention of the General Assembly. *See* Sections 1903(a) and 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1903(a), 1921(b). "Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words. *Sincavage*, 255 A.3d at 688 n.4. The UC Law should be liberally construed, of course, to ensure that "employees who become unemployed through no fault of their own are provided with some semblance of economic security." *Darby Twp. v. Unemployment Comp. Bd. of Rev.*, 429 A.2d 1223, 1227 (Pa. Cmwlth. 1981).

This Court's recent decision in *Sincavage* provides a useful comparison. In that case, the claimant retired on a Friday, before the end of her conventional work week. *Sincavage*, 255 A.3d at 687-88. It makes sense, therefore, that the claimant was ineligible for benefits because she committed a disqualifying act prior to completing her full-time schedule without a necessitous or compelling reason. In the present case, however, it appears that Claimant worked an unconventional work schedule. *See* Notes of Testimony (N.T.), 8/4/20, at 6 (Employer testifying to Claimant's position as "Full time, 72 hours" over a two-week period). Based on our interpretation of the phrase "the equivalent thereof" in Section 4(z) of the UC Law, it would be unfair to penalize an employee who commits a disqualifying act only after she would have completed her unconventional, full-time schedule but for the employer's conduct. Under such circumstances, we decline to impose a *per se* rule that prohibits an employee from receiving benefits. Thus, if Claimant can establish that she would have completed her unconventional, full-time schedule prior to her resignation, but for the termination by Employer, then she may be entitled to benefits for the period ending May 30, 2020.

**2. Referee's obligation to develop the record**

With this in mind, we turn to Claimant's next issue, in which we examine whether the Referee failed to assist Claimant in factually developing the record. Claimant asserts that there is not substantial evidence that she committed a disqualifying act prior to completing her full-time schedule. Claimant's Br. at 11. In support of this assertion, Claimant points to her *pro se* status before the Referee along with certain evidence that she believes should have triggered the Referee's obligation to develop the record further. *See id.* at 13. Upon review, we agree that the Referee failed to assist Claimant in factually developing the record.

7

"Where a party is not represented by counsel, the tribunal before whom the hearing is being held should advise [her] as to [her] rights, aid [her] in examining and cross-examining witnesses, and give [her] every assistance compatible with the impartial discharge of its official duties." 34 Pa. Code § 101.21(a). While the referee "need not advise a party on evidentiary questions or on specific points of law," the referee "must act reasonably in assisting in the development of the necessary facts." *Hackler v. Unemployment Comp. Bd. of Rev.*, 24 A.3d 1112, 1115 (Pa. Cmwlth. 2011). In determining whether the referee has given a *pro se* claimant reasonable assistance at an evidentiary hearing, the Court considers whether the referee is guiding the parties to bring out facts of which the referee knows or should know. *Id.* at 1116.

Claimant brought her unconventional work schedule to the attention of the Referee when she initiated her appeal. Claimant wrote: "My last day of work was 5/18/20. I submitted a resignation letter that stated my last day would be 5/26/20. *I was on the schedule up until that day*." Claimant's Petition for Appeal from Determinations, 7/14/20 (emphasis added). Further, at the hearing, Employer testified to Claimant's position as "Full time, 72 hours" over a two-week period. *See* N.T. at 6. However, the Referee failed to question Claimant regarding her shift schedule. In our view, the Referee was on notice that Claimant worked an unconventional schedule and should have assisted Claimant in developing the record in this regard. Accordingly, we remand to the Board with instructions to remand to the Referee for further fact-finding to ascertain Claimant's unconventional schedule, both generally and specifically for the period ending May 30, 2020.

### 3. Fault overpayment

Finally, Claimant asserts that the record is insufficient to support a finding of a fault overpayment because there is no indication in the record that she intended to defraud or mislead the Department. We agree.[7]

Section 804(a) of the UC Law provides that if a person received unemployment compensation benefits due to his or her "fault," the claimant is responsible for repaying the amount received in error plus interest. 43 P.S. §874(a). The word "fault" within the meaning of Section 804(a) connotes an act to which blame, censure, impropriety, shortcoming or culpability attaches. *Narducci v. Unemployment Comp. Bd. of Rev.*, 183 A.3d 488, 497 (Pa. Cmwlth. 2018). Conduct that is designed to improperly mislead the Department is sufficient to establish a fault overpayment. *Id*. In order to find fault, the Board must make some findings with regard to a claimant's state of mind. *Id*. A finding of fault is appropriate where a claimant fails to disclose earnings and is aware of an obligation to do so. *Summers v. Unemployment Comp. Bd. of Rev.*, 430 A.2d 1046 (Pa. Cmwlth. 1981).

Here, the Board made no finding as to Claimant's state of mind or whether she intended to deceive the Department. *See* Board's Decision/Order, 10/23/20. Moreover, Claimant testified before the Referee that she was unaware that she had to report that she resigned because she believed that she had been terminated. *See* N.T. at 6. Without a finding as to Claimant's state of mind and in light of

---

[7] We disagree with the Board's argument that Claimant waived this issue. In reviewing decisions of the Board, "[o]nly questions raised before the [Board] shall be heard or considered." Pa.R.A.P. 1551(a). In her appeal to the Board, Claimant stated, "Claimant was found ineligible for benefits the week of 5/23/20 to 5/30/20 resulting in an overpayment of $558." *See* Claimant's Pet. for Appeal from Referee's Decision/Order, 8/14/20, Attach. ("Reason for appeal"). We conclude that because Claimant raised the issue of overpayment in her reason for appeal, she also raised the sub-issue of the classification of the overpayment. Therefore, we discern no waiver.

Claimant's testimony, we conclude that the Board erred when it determined that Claimant was liable for a fault overpayment.

## CONCLUSION

If a claimant can establish that she would have completed her full-time, unconventional schedule, prior to committing a disqualifying act and but for her termination by her employer, then the claimant may be entitled to benefits for the benefit period in which her disqualifying act occurred. In this case, the Referee had an obligation to assist Claimant in developing facts relevant to her unconventional work schedule. Because the Referee failed to do so, we must remand for further fact-finding. In addition, there is not substantial evidence supporting the Board's conclusion that Claimant is liable for a fault overpayment. For these reasons, we reverse the Board's order and remand for further proceedings consistent with this Memorandum Opinion.

_____
LORI A. DUMAS, Judge

Judge Covey dissents.

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kelly Gribschaw,              :
             Petitioner     :
                            :
        v.              :   No. 1177 C.D. 2020
                            :
Unemployment Compensation     :
Board of Review,              :
             Respondent     :

# **O R D E R**

AND NOW, this 10th day of May, 2022, the order of the Unemployment Compensation Board of Review is REVERSED. We hereby REMAND to the Board for further proceedings consistent with this Memorandum Opinion.

Jurisdiction is relinquished.

 

                                   
                     LORI A. DUMAS, Judge