# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Amber Boff, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 271 C.D. 2017 |
| | : | SUBMITTED: February 6, 2018 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

MEMORANDUM OPINION BY
SENIOR JUDGE LEADBETTER                    FILED:  March 2, 2018

Claimant, Amber Boff, petitions for review of an order of the Unemployment Compensation Board of Review (Board) that affirmed the decision of a referee to deny her unemployment compensation benefits.  The decision was based on Section 402(b) of the Unemployment Compensation Law,[1] which provides that an employee is ineligible for benefits during any week "[i]n which his [or her] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature."[2]  We affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

[2] A determination as to whether necessitous and compelling cause for leaving employment exists is a question of law, subject to our plenary review. *Johnson v. Unemployment Comp. Bd. of Review*, 869 A.2d 1095 (Pa. Cmwlth. 2005).

The facts as found by the Board are as follows.[3]  Claimant worked as a full-time purchasing coordinator for Employer, Dollar Bank, from October 2008 to September 2016.  Her final annual rate of pay was $33,072.  (Board's Finding of Fact (F.F.) No. 1.)  "In December 2015, [she] was upset that the vice-president of operations (VP) no longer included her in the managers' meetings because she had been spending too much time away from her desk."  (*Id*., No. 2.)  After the VP questioned her whereabouts when she was at a dentist appointment in July 2016, she became upset.  (*Id*., No. 3.)  In August 2016, she again became upset when the VP indicated that he wanted to take her workspace and move her to a smaller area.  (*Id*., No. 4.)  After an August 2016 meeting with human resources to discuss the issues that she was having with the VP, including his desire to take her workspace, Employer advised her that the VP could move her wherever he liked.  (*Id*., No. 6.)  When Claimant came to work later that month, she discovered that Employer had moved her to a smaller cubicle with one data port.  (*Id*., No. 7.)  She did not need data ports for an individual scanner and printer, however, because she could use other readily available equipment within steps of her new workspace.  (*Id*., No. 8.)  In addition, she could meet with vendors in the meeting rooms.[4]  (*Id*., No. 9.)  On September 1, 2016, despite the availability of continuing work, Claimant left work without informing Employer that she was leaving or quitting.  (*Id*., Nos. 10 and 12.)  Subsequently, she applied for unemployment compensation benefits, alleging

[3] Although both the referee and the Board determined that Claimant was ineligible for benefits, the Board rendered its own decision.  Notably, she included only the decisions of the UC Service Center and the referee as appendices to her brief.  In addition, those appendices are not a true reproduced record.  Instead, they are selected portions of the record that she has cited in her brief and wishes to emphasize.

[4] The Board specifically rejected Claimant's testimony that she was unable to perform her job in the new workspace.  (Board's Decision at 2.)

harassment and a hostile working environment.[5]  In addition, she asserted that she attempted to resolve the situation with Employer before quitting.  (Record, Item No. 2; Claimant's Brief, Appendix D.)  The UC Service Center denied her application and Claimant appealed.[6]

On appeal, the referee held a hearing at which Claimant, acting *pro se*, and three witnesses for Employer, represented by counsel, appeared and testified. Claimant did not request a continuance in order to retain counsel.  The referee affirmed the denial of benefits.  Claimant appealed without raising any issues.[7]  After the appeal period expired, counsel entered his appearance on Claimant's behalf. (Record, Item No. 16.)  Apparently acting pursuant to the belief that there automatically would be another hearing, he stated:  "I am writing this letter to inform you that I am entering an appearance for [Claimant's] upcoming appeal hearing . . . ."  (*Id*.)  In addition, he requested a copy of the transcript and any correspondence that the unemployment compensation authorities had with Claimant.

On appeal, the Board affirmed via its own decision without addressing Claimant's failure to raise and preserve any issues on appeal.  Determining that Claimant voluntarily quit her employment, it concluded that she did not establish a hostile work environment, reasoning as follows:

---

[5] Although she initially asserted sexual harassment, Claimant later clarified in her oral interview that she meant "just harassment."  (Record, Item No. 5; Claimant's Brief, Appendix D.)

[6] In her appeal from the UC Service Center's determination, Claimant averred as follows: "DO NOT AGREE!  Claim denial was due to 'alternatives to resolve the situation.'  All options were exhausted prior to constructive discharge."  (Record, Item No. 7; Claimant's Brief, Appendix B.)

[7] Claimant left blank the space on the appeal form designated "reasons for disagreement with the referee decision and filing this appeal."  (Record, Item No. 7.)  In an attached e-mail, she merely asserted as follows:  "Please allow this to serve as my request for appeal to the UC Board of Review for [sic] referees [sic] determination/order for hearing held on October 20, 2016. . . ." (*Id*.)

[C]laimant has not described a hostile or intolerable work environment, but rather a normal work environment. The VP has the right to exclude [her] from managers' meetings and has the right to question where his employees are. Moreover, it is clear that [she] was upset that the VP took her workspace and placed her in a smaller one. However, an employer has a right to do so and [her] dissatisfaction with it is not a necessitous and compelling reason to quit.

(Board's Decision at 2.) Having determined that Claimant failed to establish a hostile working environment, the Board did not address whether she exhausted all alternatives before her voluntary quit. Claimant's petition for review followed.[8]

Asserting that the names of the officials whose determinations are before us for review include the UC representative and the referee, without mentioning the Board, counsel for Claimant sets forth the following issues: (1) whether "the UC Department err[ed] in determining [Claimant] was ineligible for unemployment compensation due to failure to exhaust alternatives?"; (2) whether the "referee fail[ed] to adequately assist [Claimant] as a *pro se* claimant?"; and (3) whether "the finder of fact ignore[d] or disregard[ed] competent evidence presented

---

[8] In her petition for review, counsel for Claimant asserted the following objections:

73. After receiving her UC benefits denial . . . [Claimant] timely appealed on the basis that she was denied opportunity to raise relevant and dispositive evidence of a hostile workplace, and evidence of such that was in fact raised, was overlooked by the UC referee as irrelevant.

74. The UC denial was made pursuant to an error of law.

75. The UC denial that was made was arbitrary and capricious.

76. The UC denial failed to consider facts presented.

(Petition for Review, Statement of Objections.)

by [Claimant] that any reasonable person would have considered important for determining the claim."[9] (Claimant's Brief at 4.)

As an initial matter, where the Board renders its own fact-findings, "it is the Board's findings, not the referee's, that are subject to our review." *Allen v. Unemployment Comp. Bd. of Review*, 638 A.2d 448, 450 (Pa. Cmwlth. 1994). The Board is the ultimate fact-finder in these matters and, as such, empowered to resolve conflicts in the evidence and to determine witness credibility and evidentiary weight. *Chapman v. Unemployment Comp. Bd. of Review*, 20 A.3d 603, 608 (Pa. Cmwlth. 2011). Further, the facts as found by the Board are conclusive on appeal as long as the record, in its entirety, contains substantial evidence to support those findings. *Id.* "Substantial evidence is relevant evidence that a reasonable mind might consider adequate to support a conclusion." *Popoleo v. Unemployment Comp. Bd. of Review*, 777 A.2d 1252, 1255 (Pa. Cmwlth. 2001). It is irrelevant that a record contains evidence to support findings other than those made by the fact-finder; the critical inquiry is whether there is evidence to support the actual findings. *Chapman*, 20 A.3d at 609.

Moreover, regarding waiver, it is well settled that issues not raised before the referee or the Board are "waived for purposes of appeal, and [will not] be addressed for the first time by this Court [on] appeal. *Id*. at 611. Here, counsel for

---

[9] Claimant seems to be invoking the capricious disregard of evidence standard of review. A capricious disregard of evidence exists "when there is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result." *Station Square Gaming L.P. v. Pa. Gaming Control Bd*., 927 A.2d 232, 237 (Pa. 2007). Although it is another standard of review that is to be applied by this Court when reviewing challenges to fact-findings, it is an appropriate component of appellate consideration only where the litigant properly brought such a question before the Court. *Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002). Here, it is far from clear that Claimant properly brought such a question before us thereby requiring us to review challenges to the Board's fact-findings pursuant to this standard.

Claimant essentially acknowledges in the "scope of review" portion of his brief that Claimant failed to raise the issues proffered on appeal. (Claimant's Brief at 2-3.) Nonetheless, quoting Pa. R.A.P. 1551, he observes that this Court may consider questions not raised before the government unit when we are "satisfied that the petitioner could not by the exercise of due diligence have raised [them] before the government unit." In addition, referencing this Court's plenary review of all issues of law in this case, he maintains that we may conduct a full and complete review of the entire record where, as here, it is necessary to determine whether Claimant can raise the issues that she failed to raise with the government unit for its further consideration. Claimant's position is without merit.

Here, after the referee issued her decision, counsel in conjunction with his entry of appearance did not even attempt to solicit permission to raise any issues *nunc pro tunc*. It remains true that parties must raise issues at the earliest possible opportunity or incur waiver. *Dehus v. Unemployment Comp. Bd. of Review*, 545 A.2d 434 (Pa. Cmwlth. 1988). Moreover, a court's exercise of plenary jurisdiction does not obviate the litigant's responsibility to raise and preserve issues throughout the proceedings. In that regard, besides an implication that Claimant's *pro se* status may have contributed to her failure and/or inability to raise and preserve issues, there is no indication that she could not have done so by the exercise of due diligence. At some point, "a layperson who chooses to represent himself in a legal proceeding must assume the risk that his lack of expertise and legal training may prove to be his undoing." *Finfinger v. Unemployment Comp. Bd. of Review*, 854 A.2d 636, 639 n.5 (Pa. Cmwlth. 2004). In any event, it appears that Claimant essentially waived raising any issues on appeal and that there is no basis for consideration of issues that she failed to raise and/or preserve.

6

Moreover, even if waiver did not apply, it is apparent that Claimant did not meet her burden of proving necessitous and compelling cause for her voluntary quit.[10] Claimant is improperly urging this Court to adopt her version of the facts, which the Board did not accept. As noted above, we are bound by the Board's findings so long as they are supported by substantial evidence. Based on the evidence that the Board found to be credible and afforded weight, it concluded that she established only a normal work environment where the executives are entitled to make decisions regarding the allocation of office space and an employee's time-off. To that end: "Our case law distinguishes normal workplace strains from pressures extreme enough to justify a resignation." *Ann Kearney Astolfi DMD PC v. Unemployment Comp. Bd. of Review*, 995 A.2d 1286, 1289 (Pa. Cmwlth. 2009). In addition, "a disagreement with an employer's policies or dissatisfaction with working conditions centered on differences with the employer's management style," absent an intolerable working atmosphere, does not constitute necessitous and compelling cause for a voluntary quit. *Gioia v. Unemployment Comp. Bd. of Review*, 661 A.2d 34, 37 (Pa. Cmwlth. 1995).

Next, even if Claimant did not waive an issue as to the referee's alleged failure to assist her as a *pro se* litigant, there similarly is no merit to that assertion.[11]

---

[10] This burden includes establishing that: "(1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and, (4) the claimant made a reasonable effort to preserve her employment." *Brunswick Hotel & Conf. Ctr., LLC v. Unemployment Comp. Bd. of Review*, 906 A.2d 657, 660 (Pa. Cmwlth. 2006).

[11] When a *pro se* litigant appears before a referee, "the referee 'must act reasonably in assisting in the development of necessary facts.'" *Hackler v. Unemployment Comp. Bd. of Review*, 24 A.3d 1112, 1115 (Pa. Cmwlth. 2011) [quoting *Bennett v. Unemployment Comp. Bd. of Review*, 445 A.2d 258, 260 (Pa. Cmwlth. 1982)]. A referee, however, need not advise the *pro se* claimant on legal theory or become an advocate on his or her behalf. *McFadden v. Unemployment Comp. Bd. of Review*, 806 A.2d 955, 958 (Pa. Cmwlth. 2002).

The referee advised Claimant at the beginning of the hearing that she had the right to an attorney or non-legal representative, the right to present evidence and testimony, and the right to question witnesses from both sides. Claimant responded that she understood her rights. (October 20, 2016, Hearing, Notes of Testimony (N.T.) at 2.) In addition, the referee went into great detail as to the process that she would follow during the course of the hearing, including first soliciting background information from Claimant and permitting Claimant as the burdened party to provide her testimony. Once again, she asked if Claimant understood the process and Claimant responded in the affirmative. (*Id*. at 4.) There were also numerous instances where the referee followed up with open-ended questions thereby providing Claimant with opportunities to present her position.[12] In addition, toward the end of Claimant's direct testimony, the referee asked her if she had anything to add. (*Id*. at 13.) The referee also provided Claimant with the time and opportunity to cross-examine each of Employer's witnesses. Finally, the referee asked Claimant if she wished to make a brief closing or rest on the information that she already had provided. (*Id*. at 40.) Accordingly, this is not a case where the referee improperly failed to assist a *pro se* claimant.

Finally, Claimant's argument that competent evidence was capriciously disregarded relates to whether or not she took reasonable steps to maintain her employment. Since the Board found that she did not have a necessitous and compelling reason to quit, it did not need to address whether she took such steps and it did not do so. Similarly, we need not address that issue.

---

[12] By way of illustration, two of the referee's open-ended questions included: (1) "Okay but you were having issues with Mr. Jackson?" and (2) "And what was going on with that?" (N.T. at 6.) Additional questions included: (1) "So did you speak to your immediate supervisor about why you were being removed from the managers' meeting?" and (2) "How do you mean reprimanded?" (*Id*. at 7 and 9.)

For the foregoing reasons, we affirm the decision of the Board.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amber Boff,                   :

         Petitioner    :

                     :

        v.            :   No. 271 C.D. 2017

                     :

Unemployment Compensation  :
Board of Review,           :

         Respondent  :

# O R D E R

AND NOW, this 2nd day of March, 2018, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

_____

**BONNIE BRIGANCE LEADBETTER,**
Senior Judge
